SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No.  CR-98-0278-AP |
| Appellee, | ) | |
| | ) | Pima County Superior |
| v. | ) | Court |
| | ) | No. CR-55947 |
| | ) | |
| SCOTT DOUGLAS NORDSTROM, | ) | |
| | ) | |
| Appellant. | ) | **S U P P L E M E N T A L** |
| | ) | **O P I N I O N** |
| | ) | |

Appeal from the Superior Court in Pima County
No. CR-55947
The Honorable Michael Cruikshank, Judge *Pro Tempore*

**REMANDED FOR RESENTENCING**

---

Janet A. Napolitano, Former Arizona Attorney General
Terry Goddard, Arizona Attorney General                    Phoenix
     By   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
    and   Robert L. Ellman, Assistant Attorney General
          James P. Beene, Assistant Attorney General
          John P. Todd, Assistant Attorney General
          Bruce M. Ferg, Assistant Attorney General      Tucson
          Donna J. Lam, Assistant Attorney General       Tucson
Attorneys for Appellee

LAW OFFICE OF DAVID ALAN DARBY                            Tucson
     By   David Alan Darby
Attorney for Appellant

---

**R Y A N**, Justice

¶1      The sole issue before us is whether reversible error occurred when a trial judge sentenced Scott Nordstrom to death

under a procedure the United States Supreme Court held unconstitutional in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*). Based on our review of the record, we cannot conclude that the *Ring II* violation constituted harmless error.

**I.**

**¶2**        In *Ring II*, the United States Supreme Court held that Arizona's capital sentencing scheme violates the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution.[1]  *Id.* at 608-09, 122 S. Ct. at 2443.  The Court declared that "[c]apital defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  *Id.* at 589, 122 S. Ct. at 2432.  The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), and remanded for further proceedings consistent with its decision.  *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443.

**¶3**        Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate, including Nordstrom's, to determine whether *Ring II* requires us to reverse or vacate the defendants' death sentences.  *State v. Ring,* 204 Ariz. 534, 545, ¶

---

[1]      The legislature amended the statute requiring judge-sentencing in capital cases.  *See* 2002 Ariz. Sess. Laws, 5th Spec. Sess. ch. 1, § 1.

14, 65 P.3d 915, 926 (2003) (*Ring III*). We concluded that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error.[2] *Id.* at 555, ¶ 53, 65 P.3d at 936.

## II.

¶4        A jury convicted Nordstrom of six counts of first degree murder, along with other charges, for events that occurred at the Moon Smoke Shop in Tucson on May 30, 1996, and at the Firefighters' Union Hall in Tucson on June 13, 1996. *State v. Nordstrom,* 200 Ariz. 229, 238-39, ¶ 12, 25 P.3d 717, 726-27 (2001). On the murder charges, the jury unanimously convicted Nordstrom of felony murder as to all victims. *Id.* In addition, the jury unanimously found that one murder at the smoke shop and one murder at the union hall were premeditated. *Id.*

---

[2]        Relying on the Ninth Circuit's recent opinion in *Summerlin v. Stewart*, No. 98-99002, 2003 WL 22038399 (9th Cir. Sept. 2, 2003), Nordstrom argues that *Ring II* error is structural and therefore not subject to harmless error review. *Summerlin*, in holding that the rule announced in *Ring II* applied retroactively to cases on federal habeas corpus review, concluded that a judge's imposition of a death sentence "cannot be subject to harmless error analysis." *Id*. at *33. We are not bound by the Ninth Circuit's interpretation of what the Constitution requires. *See State v. Vickers*, 159 Ariz. 532, 543 n.2, 768 P.2d 1177, 1188 n.2 (1989) (declining to follow a Ninth Circuit decision, which held Arizona's death penalty statute unconstitutional, because it rested on "grounds on which different courts may reasonably hold differing views of what the Constitution requires"); *State v. Clark*, 196 Ariz. 530, 533, ¶ 14, 2 P.3d 89, 92 (App. 1999) (same). Accordingly, we decline to revisit our conclusion that *Ring II* error can be reviewed for harmless error.

¶5     The trial judge conducted a sentencing hearing to determine whether any aggravating and mitigating circumstances existed.  The judge found beyond a reasonable doubt the presence of three aggravating circumstances for each murder:  1) Nordstrom had previously been convicted of another offense in the United States for which a sentence of life imprisonment or death was imposable under Arizona Revised Statutes ("A.R.S.") section 13-703(F)(1) (Supp. 1993); 2) Nordstrom committed the murders in expectation of the receipt of pecuniary gain under A.R.S. section 13-703(F)(5); and 3) Nordstrom had been convicted of committing multiple homicides under A.R.S. section 13-703(F)(8).  The court found no statutory mitigating factors, and no non-statutory mitigating factors "sufficiently substantial to call for leniency."  A.R.S. § 13-703(E).  Accordingly, the trial judge sentenced Nordstrom to death.  This court affirmed Nordstrom's convictions and death sentences on direct review.  *Nordstrom,* 200 Ariz. at 257, ¶ 99, 25 P.3d at 745.[3]

---

[3]     We noted in our opinion on direct appeal that because the trial judge "did not make clear that the aggravator analysis complied with the prohibition on double-counting" as to the (F)(1) and (F)(8) factors, only one of the factors could be considered in our independent review of Nordstrom's death sentences. *Nordstrom*, 200 Ariz. at 256 n.17, 25 P.3d at 744 n.17 (citing *State v. Jones*, 197 Ariz. 290, 311, ¶ 65, 4 P.3d 345, 366 (2000)).  We nevertheless found that the sentence of death was appropriate.  *Id*. at 257, ¶ 98, 25 P.3d at 745.

A.

¶6      Under A.R.S. section 13-703(F)(1), a conviction of another offense with a possible sentence of death or life imprisonment is an aggravating factor.  In *Ring III*, we held that the Sixth Amendment does not require a jury to determine the existence of an (F)(1) factor.  204 Ariz. at 556, ¶ 55, 65 P.3d at 937; *see also Sattazahn v. Pennsylvania,* 537 U.S. 101, 111 (2003).

¶7      The trial judge concluded that each of the murders at the Moon Smoke Shop satisfied the F(1) aggravating factor as to the Firefighters' Union Hall murders, and that the Firefighters' Union Hall murders satisfied the F(1) aggravating factor for the Moon Smoke Shop murders.  Other than arguing that a jury must find all aggravating factors, an argument we rejected in *Ring III*, 204 Ariz. at 552-55, ¶¶ 44-52, 65 P.3d at 933-36, Nordstrom concedes that under our decision in *Ring III*, "remand for resentencing on this aggravating factor is not required."  Accordingly, we will not disturb the trial court's finding that the (F)(1) aggravating factor was proven.

B.

¶8      Commission of an offense "as consideration for the receipt, or in expectation of the receipt, . . . of anything of pecuniary value" is an aggravating circumstance.  A.R.S. § 13-703(F)(5).  This factor exists only "if the expectation of

-5-

pecuniary gain is a motive, cause, or impetus for the murder and not merely a result of the murder." *State v. Hyde,* 186 Ariz. 252, 280, 921 P.2d 655, 683 (1996). "Proving a taking in a robbery does not necessarily prove the motivation for a murder." *State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991) (quoting *State v. Carriger*, 141 Ariz. 142, 161, 692 P.2d 991, 1010 (1984)). Instead, it is a highly fact-intensive inquiry requiring the state to prove a connection between the murder and motive through direct or circumstantial evidence. *Ring III,* 204 Ariz. at 560, ¶¶ 76-77, 65 P.3d at 941; *State v. Cañez*, 202 Ariz. 133, 159, ¶ 93, 42 P.3d 564, 590 (2002). A murder in expectation of pecuniary gain is distinguished "from a 'robbery gone bad' or a robbery that occurs close in time to a murder but that constitutes a separate event for the purpose of an [(F)(5)] determination." *State v. Sansing*, 200 Ariz. 347, 353-54, ¶ 14, 26 P.3d 1118, 1124-25 (2000).

¶9     We will find harmless error affecting this factor only if we are convinced beyond a reasonable doubt that no reasonable jury could fail to find that the state proved pecuniary gain beyond a reasonable doubt. *Ring III*, 204 Ariz. at 560, ¶ 79, 65 P.3d at 941.

¶10     The murders at both the Moon Smoke Shop and the Firefighters' Union Hall occurred simultaneously with the robberies of each establishment and therefore facilitated Nordstrom's ability to secure pecuniary gain. No evidence suggests any motive for the murders but pecuniary gain. And no evidence suggests the murders were committed as a result of a "robbery gone bad." *See Nordstrom*,

-6-

200 Ariz. at 256, ¶ 94, 25 P.3d at 744; *see also State v. Jones*, 197 Ariz. 290, 309, ¶ 56, 4 P.3d 345, 364 (2000) (finding on Nordstrom's codefendant's direct appeal of his convictions on the same charges that the robberies in this case were not "robberies gone bad").

¶11    Although Nordstrom now argues "it would be mere speculation" for this court to find harmless error with respect to this factor, during the sentencing hearing Nordstrom admitted that the State proved the pecuniary gain aggravating factor beyond a reasonable doubt.[4]  In *Ring III*, we held that when a "defendant stipulates, confesses or admits to facts sufficient to establish an aggravating circumstance, we will regard that factor as established." 204 Ariz. at 563, ¶ 93, 65 P.3d at 944.  We therefore conclude that no reasonable jury, hearing the same evidence as the judge, could find that Nordstrom did not commit the murders for pecuniary gain.  Accordingly, any *Ring II* violation was harmless beyond a reasonable doubt.

## C.

¶12    An aggravating factor exists if "[t]he defendant has been convicted of one or more other homicides . . . which were committed

---

[4]    Although Nordstrom conceded that the State proved the pecuniary gain aggravating factor beyond a reasonable doubt, he also stated that "if the intent of the legislature was to limit the pecuniary gain aspect to a situation where you hire someone to kill somebody, certainly pecuniary gain was not applicable."  He therefore asked to preserve that issue.  However, we have previously rejected that claim. *State v. Nash*, 143 Ariz. 392, 401, 694 P.2d 222, 231 (1985); *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980).

during the commission of the offense." A.R.S. § 13-703(F)(8). To satisfy this factor, the state must establish "more than that the jury convicted the defendant of first degree murder and one or more other homicides occurring around the same time." *Ring III*, 204 Ariz. at 560, ¶ 80, 65 P.3d at 941. Instead, the homicides must be temporally, spatially, and motivationally related, taking place during "one continuous course of criminal conduct." *State v. Rogovich*, 188 Ariz. 38, 45, 932 P.2d 794, 801 (1997) (quoting *State v. Ramirez*, 178 Ariz. 116, 130, 871 P.2d 237, 251 (1994)).

¶13 "We will find harmless error affecting this factor in those cases in which no reasonable jury could find that the state failed to prove the [(F)(8)] factor beyond a reasonable doubt." *Ring III*, 204 Ariz. at 561, ¶ 82, 65 P.3d at 942.

¶14 The trial court found that "[e]ach of the two murders at the Moon Smoke Shop constitutes proof of this factor as to the other; each of the four murders at the Firefighter's [sic] Union Hall constitutes proof of this factor to each of the others." The gist of Nordstrom's argument on this issue is that the trial court erred in counting the felony murders "against the premeditated murder" in finding that the (F)(8) factor had been proven. According to Nordstrom, because he was "convicted unanimously by the jury of only one premeditated murder in the Moon Smoke Shop and one premeditated murder in the Firefighter's [sic] Hall robberies," the remaining felony murders, both at the smoke shop and at the union hall, should not be counted as "collateral" murders for

purposes of (F)(8).

¶15     Nordstrom's contention ignores the fact that "first degree murder is only one crime regardless of whether it occurs as a premeditated murder or a felony murder." *State v. Berndt*, 138 Ariz. 41, 45, 672 P.2d 1311, 1315 (1983).  Moreover, "[t]he plain meaning of [(F)(8)] reads that if a defendant has been convicted of *one or more other* homicides, and this conviction arose out of the commission of the offense, the homicide conviction is an aggravating factor that the State could allege and the trial judge may find."   *Greenway*, 170 Ariz. at 167, 823 P.2d at 34.   In addition, the plain language of (F)(8) does not limit the "one or more other homicides" to convictions for premeditated murder. Thus, Nordstrom indisputedly stands convicted of "one or more other homicides . . . that were committed during the commission of the offense."  A.R.S. § 13-703(F)(8).

¶16     Because the armed robberies and murders at both the Moon Smoke Shop and the Firefighters' Union Hall were committed during a continuous course of criminal conduct at each place, the murders were temporally, spatially, and motivationally related.  Nordstrom does not argue otherwise.  Accordingly, "any error as to the (F)(8) aggravator was harmless because we believe that no reasonable jury could have found differently than the trial judge."  *State v. Tucker*, ___ Ariz. ___, ¶ 66, 68 P.3d 110, 122 (2003).

-9-

## D.

**¶17**    Based on our review of the record, we conclude that no reasonable jury would have failed to find the aggravating factors set forth in A.R.S. sections 13-703 (F)(5) or (F)(8) proven beyond a reasonable doubt.  Moreover, the (F)(1) aggravating factor falls outside the *Ring II* mandate.  *Ring III,* 204 Ariz. at 556, ¶ 55, 65 P.3d at 937.  Therefore, any error with respect to the aggravating factors was harmless beyond a reasonable doubt.

## IV.

**¶18**    As we explained in *Ring III*, our harmless error inquiry does not end with the aggravating circumstances.  204 Ariz. at 565, ¶ 104, 65 P.3d at 946.  We can affirm a capital sentence only if we can conclude beyond a reasonable doubt "that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency." *Id.*  Because of our conclusion that any *Ring II* error as to the aggravating factors was harmless, we must now review whether harmless error occurred with respect to the mitigating factors.  We conclude that because some of the findings with respect to the mitigating factors rested on an assessment of the credibility of witnesses, we must remand for resentencing.

**¶19**    At the sentencing hearing, Nordstrom offered no statutory mitigating factors.  Nevertheless, the trial court examined each statutory mitigating circumstance and found none were supported by the evidence.

-10-

¶20     Nordstrom offered the following non-statutory mitigating factors: (1) difficult family and childhood background; (2) good record of employment; (3) residual doubt as to guilt; (4) mental health and substance abuse problems; (5) caring parent and family; (6) no prior convictions for serious offenses; (7) artistic talent; (8) he was a follower; and (9) successful adjustment to prison. The trial court found Nordstrom had proven by a preponderance of the evidence the non-statutory mitigation factors of good employment record, and caring parents and family. But the court found that this mitigation was "insufficient to call for leniency."

¶21     Nordstrom now argues that a jury, hearing the same mitigation evidence as did the trial court, could have found one or more of the statutory mitigating factors to be proven. He also argues that the jury could have found one or more of the non-statutory mitigating factors not found by the trial court. He therefore contends that this matter must be remanded for resentencing.

¶22     The State first argues that we should revisit the portion of *Ring III* that held we must also examine the harmlessness of the mitigation findings and the weighing and balancing of aggravating and mitigating circumstances before we can uphold a sentence of death. The State, however, presents no new arguments or case law. Therefore, we decline the State's invitation to revisit *Ring III*'s holding on this issue.

¶23     The State next argues at length that any *Ring III* error as to the mitigating circumstances, whether statutory or non-statutory, was harmless.  It contends "No reasonable juror would conclude that Nordstrom's proffered mitigation, considered individually or cumulatively, is sufficiently substantial to call for a sentence less than death when balanced against the overwhelming weight of prior convictions or multiple homicides and pecuniary gain."  Nevertheless, the State concedes that if *Ring III* remains the law, this case must be remanded for resentencing.[5]  We accept the State's concession and agree that this matter must be remanded for resentencing for the following reasons.

¶24     Nordstrom presented expert testimony that he suffered from alcohol dependence, cannabis dependence, methamphetamine abuse, and "two psychiatric diseases of post-traumatic stress disorder and antisocial personality disorder."[6]  In addition, his mother testified that Nordstrom's father and stepfather were emotionally abusive to him, he had a learning disability, he began to abuse

---

[5]     The State filed a petition for certiorari in the United States Supreme Court challenging this court's position, as applied in *State v. Pandeli*, that under the Supreme Court's decision in *Ring II*, an analysis of harmless error at the sentencing phase of a capital trial must also "consider whether reversible error occurred with respect to the mitigating circumstances."  204 Ariz. 569, 572, ¶ 10, 65 P.3d 950, 953 (2003); *see also Ring III*, 204 Ariz. at 561-62, ¶¶ 87-90, 104, 65 P.3d at 942-43.  The State acknowledges that if the Supreme Court denies its petition for certiorari, *Ring III* requires resentencing.

[6]     Nordstrom declined to offer post-traumatic stress disorder as a mitigating factor because the diagnosis was based upon an event that occurred after the murders.

drugs and alcohol at a young age, and he was a follower.

**¶25**     The trial judge rejected this evidence because he found no causal connection between Nordstrom's diagnoses and the murders. Nordstrom's expert testified however, that there "could . . . be a causal connection to the commission of a violent crime" and Nordstrom's alcohol and substance abuse, his dysfunctional and abusive family, his "antisocial behavior," his impulsiveness, and his "learning problems as a child."

**¶26**     We recognize that the evidence supporting Nordstrom's claim that the murders were causally connected to his substance abuse and mental health problems was not particularly compelling. But he did present evidence from an expert on this issue. *Cf. State v. Sansing*, ___ Ariz. ___, ____, ¶ 26, ___ P.3d ___, ___ (2003) (finding that "[t]ypically, in those cases in which a defendant established statutory impairment, the defendant presented an expert witness").

**¶27**     Accordingly, we cannot conclude beyond a reasonable doubt that a jury would not have weighed this evidence differently than did the trial judge.  And a different finding as to the mitigating circumstances could affect the determination whether the mitigating circumstances are "sufficiently substantial to call for leniency." A.R.S. § 13-703(E).  Therefore, we are unable to find that the *Ring II* error was harmless in this case.

## V.

**¶28**     For the foregoing reasons, we vacate Nordstrom's death

-13-

sentences and remand for resentencing by a jury under A.R.S. sections 13-703 and - 703.01 (Supp. 2002).

_____
Michael D. Ryan, Justice

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice

_____
Rebecca White Berch, Justice

**J O N E S**, C.J., concurring in part, dissenting in part:

**¶29**      I concur in the result, but I respectfully dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an impartial jury is fundamental.  The sentencing phase is, of itself, a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred.  In the aftermath of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) *(Ring II),* the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error.  I would remand the case

-14-

for resentencing, simply on the basis of the Sixth Amendment violation. *See State v. Ring*, 204 Ariz. 534, 565-67, ¶¶ 105-14, 65 P.3d 915, 946-48 (2003)(Feldman, J., concurring in part, dissenting in part) (*Ring III*).

_____
Charles E. Jones, Chief Justice

Note:    Justice Hurwitz took no part in the consideration or decision of this case.